IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

MADISON BOARDWALK, LLC,

                              Plaintiff,                    OPINION AND ORDER

     v.
                                                                  13-cv-288-bbc

OMEGA COMMERCIAL FINANCE CORP.,
JON S. CUMMINGS, IV and
VON C. CUMMINGS,

                              Defendants.

---

     This civil diversity action involves plaintiff Madison Boardwalk, LLC's effort to fund
the development of an Aloft Hotel in Madison, Wisconsin.  Plaintiff alleges that Omega
Commercial Finance Corporation refused to fund the project despite having made assurances
to plaintiff that it had the money to fund the development, having accepted plaintiff's
$25,000 fee and knowing that plaintiff had fulfilled all of the conditions set prior to the
closing.  Plaintiff has sued defendants Jon and Von Cummings for making intentional
misrepresentations about Omega's ability to fund the project and defendant Omega for
breach of contract and unfair trade practices.

     Three matters are before the court: (1) whether diversity jurisdiction exists in this
case; (2) whether plaintiff's claims against defendants Omega and Jon Cummings should be
dismissed against them for improper venue under Fed. R. Civ. P. 12(b)(3) and lack of
personal jurisdiction under Rule 12(b)(2), dkt. #9; and (3) whether plaintiff should be
allowed to file a surreply, dkt. #19.  In an order entered on October 9, 2013, I directed
plaintiff to "produce facts verifying the diversity of citizenship between it and all of the

defendants." Dkt. #32 at 2. I reminded plaintiff that "the citizenship and not the residency" of an individual is what matters for diversity jurisdiction purposes." Id. In its response, plaintiff's counsel averred that all of the members of the three limited liability companies that are members of plaintiff are citizens of Wisconsin: they have permanent homes in this state and they have the intention of returning to those homes whenever they are absent from the state. However, plaintiff did not provide any information to show that the individual defendants are citizens of the states of which they are alleged to be residents. However, it appears so likely that plaintiff can correct this oversight that I will decide the motion to dismiss the case. Plaintiff may have until November 21, 2013 to provide information to the court about the *citizenship* and not just the residency of the named defendants.

Defendants' motion to dismiss turns on defendants' contention that venue is improper because the parties' contract contains a forum selection clause that requires any lawsuit arising from the contract to be filed in the state of Florida. Defendants also allege that they lack sufficient contacts with the state of Wisconsin to satisfy the personal jurisdiction requirements of Wisconsin's long-arm statute and the Fourteenth Amendment's due process clause. I conclude that venue is proper in this court because defendant has adduced no evidence that plaintiff agreed to a forum selection clause. I conclude as well that plaintiff has met its burden with respect to the long-arm statute and the due process clause. Accordingly, I am denying defendants' motion to dismiss for lack of personal jurisdiction.

As for plaintiff's unopposed motion to file a surreply, I will grant the motion because it is a limited response to new averments filed by defendants in lieu of a reply brief.

From the complaint and the documents submitted by the parties in connection with the pending motion to dismiss, I draw the following facts, solely for the purpose of deciding the motion.


FACTS

A.  The Parties

Plaintiff Madison Boardwalk, LLC is a Wisconsin limited liability company with a principal place of business in Green Bay, WI.  Plaintiff owns property at 844 John Nolen Drive in Madison, Wisconsin, the location of the proposed Aloft Hotel development.

Defendant Omega Commercial Financial Corp. is a direct balance sheet lender that holds itself out as specializing in financing projects up to $500 million dollars with quick and efficient closings.  Defendant Jon Cummings is the president and chairman of Omega. Defendant Von Cummings was acting as Omega's agent during the parties' negotiations.


B.  Negotiations

Around April 30, 2012, Michael Hubert, a real estate broker for plaintiff, spoke with Dennis Deppisch of L&E Consultants, LLC in Madison, Wisconsin about the hotel project. On May 21, 2012, Deppisch sent Hubert a general term sheet.  On September 19, 2012, Hubert sent information on the hotel project to Deppisch and Brian Dineen of Trinity

3

Capital Solutions LLC in Milwaukee, Wisconsin. Hubert, Deppisch and Dineen corresponded about Omega's potential involvement in the project over the next few months, and Dineen sent plaintiff updates about Omega's schedule and his conversations with Omega. Dkt. ##22-30.

By October 25, 2012, plaintiff learned from Omega's website and Trinity Capital Solutions that Omega had the ability to finance the land acquisition and the construction of the Aloft Hotel. On October 25, 2012, Jon Cummings sent plaintiff a term sheet confirming the details of the project, identifying the due diligence information Omega would review and requiring plaintiff to pay Omega a $25,000 due diligence fee. He represented to plaintiff that Omega had the funds to invest in the hotel project. On October 29, 2012, plaintiff signed and returned the term sheet and wired the due diligence fee to Omega. Omega countersigned the term sheet on the same date.

Between October 29, 2012 and December 8, 2012, plaintiff provided defendants documents regarding the project and defendants completed their due diligence. On December 8, 2012, Omega sent plaintiff a commitment letter that set the closing for on or about March 14, 2013 and identified seven conditions that had to be met before that date.

Between December 8, 2012 and April 15, 2013, the parties discussed the project, including the fact that the funding negotiations needed to close on or before April 22, 2013 to prevent the loss of key money and additional engineering and holding costs. On April 7, 2013, Von Cummings told plaintiff that Omega could expedite the funding of the project if plaintiff bought $350,000 of Omega stock. As a result of this representation, plaintiff had

4

its attorney draft and negotiate an amendment to the loan commitment for the purchase of Omega's stock. However, during the negotiation, plaintiff learned that Omega did not have the funds to invest in the project. Although plaintiff satisfied all of the conditions before the closing date and defendants did not impose any other conditions that would prevent funding, Omega refused to fund the project.

### C. The Commitment Letter

Plaintiff attached a copy of the commitment letter to its complaint. Commitment Letter, dkt. #1, exh. 5. Although the agreement appears to consist of 11 pages, the signature block of the commitment letter appears on what is marked "Page 5 of 11." Pages 6 through 11 are not attached to the letter submitted with the complaint. Terry Gerbers signed page five on behalf of plaintiff on December 13, 2012, and Jon Cummings signed on behalf of Omega on December 17, 2012. Also on page five is a section entitled "Governing Law," which provides that the governing law "shall be at the sole and absolute discretion of Omega."

The agreement provided for a broker's fee in the amount of $509,915, payable to Trinity Capital Solutions and L&E Consultants. (Jon Cummings avers that Omega did not have a contract with either entity, and Rick Van Den Heuval, a member of plaintiff, averred that plaintiff did not negotiate the broker fee.) Omega and plaintiff were each to have a 50 percent controlling ownership interest in a limited liability company that was to serve as the acquiring entity and as a separately operating subsidiary of Omega. Both parties agreed to

5

be equal managing members of "Aloft Madison LLC" for all decision making, including the pledging of business assets and any material changes in business operations or the business model.  The parties also were to share equally in "all net profits of the business operations."  Dkt. 1, exh. 5 at 3.

As an attachment to their motion to dismiss, defendants submitted their own copy of the commitment letter; it contains eleven pages.  Dkt. #9, exh. 1.  Pages six through 11 constitute "Schedule 'A,'" which includes both a Governing law and Choice of Forum section:

> 12. **Governing Law**:  This financing Conditional Commitment for Commercial Real Estate Financing Program Agreement and the other financing program documents (except the Mortgage or Note, etc. forming the Mortgage Financing program which shall be construed in accordance with the law of the state of Florida for OMEGA CRE GROUP LLC shall be governed by and construed in accordance with the internal substantive laws of the State of Florida, without regard to the choice of law principles of such state.

> 13. **Choice of Forum**:  GUARANTOR/BORROWER consents to the jurisdiction of any state or federal court sitting in the State of Florida and that venue shall be proper in any such court to the exclusion of the courts in any other state or country.  The GUARANTOR/BORROWER further agrees that such designated forum is proper and convenient.

Schedule A is not referred to within the signed portion of the agreement.  The schedule concludes on page 11 with its own signature block for Gerbers to indicate his acceptance of its terms.  Gerbers did not sign the Schedule A signature block.  (Plaintiff's real estate agent, Hubert, avers that after reviewing Omega's proposed commitment letter, plaintiff believed Schedule A was included in error because Omega was an equity partner in the transaction and Schedule A had note and guaranty provisions.  According to Hubert,

plaintiff told Omega that it thought the additional terms were an oversight and scheduled a conference call with Omega to clarify the issue, but that call was canceled.  Aff. of Michael Hubert, dkt. #22 at ¶¶ 9-10.  Jon Cummings avers that plaintiff never informed Omega that it was rejecting Schedule A and that he always has believed that the forum selection clause was part of the parties' agreement.  Aff. of Jon Cummings, dkt. #18 at ¶¶ 15-17.)

OPINION

A.  <u>Venue</u>

Defendants argue that venue is improper in this court because the parties' agreement contains a choice of forum clause providing that plaintiff consents to the jurisdiction and venue of any state or federal court in the state of Florida.  The flaw in this argument is that the clause appears in Schedule A of the agreement, which plaintiff never signed.  Although Jon Cummings avers in a reply affidavit that plaintiff never informed Omega that it was rejecting Schedule A and that he always has believed that the forum selection clause was part of the parties' agreement, defendants fail to explain why plaintiff never signed Schedule A. Defendants' only argument for holding plaintiff to Schedule A is the fact that the signed commitment letter indicates that it is 11 pages long and Schedule A constitutes pages 6 through 11.  However, defendants have failed to cite any authority, and I unaware of none, that would allow this fact alone to prove the existence of a binding agreement between the parties with respect to forum.  Accordingly, I am denying defendants' motion on this ground.

B. <u>Personal Jurisdiction</u>

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden of proof rests on the party asserting jurisdiction—in this case, plaintiff—to make a prima facie showing supporting that assertion.  <u>Hyatt International Corp. v. Coco</u>, 302 F.3d 707, 713 (7th Cir. 2002).  In deciding defendants' dismissal motion, this court must accept as true all well-pleaded facts alleged in the complaint and also resolve in plaintiff's favor all disputes concerning relevant facts presented in the record. <u>Purdue Research Foundation v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 782 (7th Cir. 2003) (quoting <u>Nelson v. Park Industries, Inc.</u>, 717 F.2d 1120, 1123 (7th Cir. 1983)).  <u>See also</u> <u>Tamburo v. Dworkin</u>, 601 F.3d 693, 700 (7th Cir. 2010) (quoting same).

A federal court has personal jurisdiction over a non-consenting, nonresident defendant to the extent authorized by the law of the state in which that court sits, <u>Giotis v. Apollo of the Ozarks, Inc.</u>, 800 F.2d 660, 664 (7th Cir. 1986), unless the federal statute at issue permits nationwide service or the defendant is not subject to personal jurisdiction in any state in the United States, Fed. R. Civ. P. 4(k)(1); <u>Janmark, Inc. v. Reidy</u>, 132 F.3d 1200, 1201-02 (7th Cir. 1997).  Because the parties do not assert that either exception applies in this case, the issue is whether there is personal jurisdiction over defendants under Wisconsin law.

In Wisconsin, this is a two-step inquiry.  First, the court must determine whether the defendants fall within the grasp of Wisconsin's long-arm statute, Wis. Stat. § 801.05.  <u>Logan Products, Inc. v. Optibase, Inc.</u>, 103 F.3d 49, 52 (7th Cir. 1996); <u>Kopke v. A. Hartrodt</u>

S.R.L., 245 Wis. 2d 396, 408-09, 629 N.W.2d 662, 667-68 (Wis. 2001). If the statutory requirements are satisfied, then the court must consider whether the exercise of jurisdiction over each defendant comports with due process requirements of the Fourteenth Amendment of the United States Constitution. Id.

1. Wisconsin's long-arm statute

Plaintiff contends that personal jurisdiction over defendants is warranted under the tort, contract and property provisions of Wisconsin's long arm statute, Wis. Stat. §§ 801.05(4)(a), (5)(a) and (6)(a), which provide:

> **(4) Local injury; foreign act.** In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . .
>
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant.
>
> *   *   *
>
> **(5) Local services, goods or contracts**. In any action which:
>
> (a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff.
>
> *   *   *
>
> **(6) Local property.** In any action which arises out of:
>
> (a) A promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to create in either party an interest in, or protect, acquire, dispose of, use, rent, own, control or possess by either party real property situated in this state.

9

With little explanation, plaintiff contends that Jon Cummings's representations "through the term sheet and commitment letter" and Omega's contractual promises to provide funding and create an interest in real property in Wisconsin satisfy the statutory criteria.  In reply, defendants filed only an affidavit from Jon Cummings, who discussed Omega's general lack of contacts in Wisconsin.  Dkt. #18.  However, in their supporting brief, defendants argue that under the contract, they were to perform a service for plaintiff in Florida and states other than Wisconsin and that the contract did not transfer an interest in the property in Wisconsin.

Liberally construing the long-arm statute in favor of finding personal jurisdiction, I find that at least three sections of the statute apply to defendants.

a.  § 801.05(4)(a)

A defendant engages in "solicitation activities" under § 801.05(4)(a) when it solicits business in Wisconsin with the expectation of financial benefit.  Federated Rural Electric Insurance Corp. v. Inland Power & Light Co., 18 F .3d 389, 393 (7th Cir. 1994); Koss Corp. v. Max Sound Corp., 2013 WL 1819684, *1 (E.D. Wis. Apr. 28, 2013).  Both Trinity Capital Solutions and defendant Jon Cummings carried on solicitation activities within Wisconsin by informing plaintiff in 2012 that Omega had the funds to invest in the hotel project.  Although the exact relationship between Trinity Capital Solutions and defendants is unclear, Trinity did act as a broker between the parties and the contract provided for a fee for those services.  Omega also communicated with plaintiff in Wisconsin throughout 2012

10

and 2013 with hopes of striking a deal with plaintiff.  The parties discussed the project over the course of several months and Omega sent copies of the term sheet and commitment letter to plaintiff's Wisconsin offices.  On April 7, 2013, Von Cummings acted on behalf of Omega in telling plaintiff that Omega could expedite the funding of the project if plaintiff bought $350,000 of Omega stock.

The above acts are sufficient to constitute ongoing solicitation by defendants Jon Cummings and Omega under § 801.05(4)(a).  Housing Horizons, LLC v. Alexander Co., 2000 WI App 9, ¶¶ 12-14, 232 Wis. 2d 178, 188, 606 N.W.2d 263, 267 (legislature contemplated defendant or its representative be engaged in regular, ongoing or repetitive activities in Wisconsin).  Although plaintiff does not make this argument, I note that much of the same conduct would appear to satisfy the "local act or omission provision of the long-arm statute, which provides for jurisdiction "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant."  Wis. Stat. § 801.05(3).  At least according to plaintiff's allegations, defendants' Wisconsin-directed communications were intentional misrepresentations designed to deceive plaintiff about Omega's ability to finance the Aloft Hotel project.  That series of alleged misrepresentations amounts to a "local act" causing "injury to person or property within ... this state."  It is well established that injury through telephone, mail or electronic communications satisfies section 801.05(3).  Felland v. Clifton, 682 F.3d 665, 679 (7th Cir. 2012) (finding personal jurisdiction proper where foreign corporation's calls

11

and correspondence to Wisconsin were designed to deceive plaintiffs about progress and financing of condominium development).

b. § 801.05(6)(a)

Contrary to defendants' assertions, the terms of the commitment letter appear to create an interest in the Aloft Hotel for both parties under § 801.05(6)(a).  Omega and plaintiff were each to have a 50 percent controlling ownership interest in a limited liability company that was to serve as the acquiring entity and a separately operating subsidiary of Omega.  Both parties agreed to be equal managing members of an LLC that was to be set up for all decision making, including the pledging of business assets and any material changes in business operations or the business model.  In addition, the parties were to share equally in all net profits from the hotel business.

c. § 801.05(5)(a)

"Wisconsin courts have stated that sufficient minimum contacts exist for a defendant to be subject to jurisdiction under subsection 5(a) if the following three jurisdictional facts are present:

(i) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the bargaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state.

Federated Rural Electric, 1993 WL 603562 (W.D. Wis. Apr. 28, 1993) aff'd, 18 F.3d 389 (7th Cir. 1994) (citing Capitol Fixture v. Woodma Distributors, Inc., 147 Wis. 2d 157, 432 N.W.2d 647, 650 (Ct. App. 1988); Foster, Revision Notes to Wis. Stat. § 801.05(5) (1959)).   The parties agree that the commitment letter existed and that the claims being asserted in this suit relate to it.   Omega contends that its promised service was allocating capital for the project and that this was to occur outside of Wisconsin.   However, as described above, the parties' agreement provided Omega a half ownership in the hotel, decision-making authority with respect to the property and a share of the hotel's ongoing profits.   Considered together, these facts are sufficient to show that the "arrangement itself involves or contemplates some substantial connection with the state" under § 801.05(5)(a).

2. Due process

As a preliminary matter, I note that with respect to the due process analysis, defendants rely on federal law and plaintiff relies on state law.   "When determining whether state courts would have jurisdiction, however, federal courts are under no obligation to defer to state court interpretations of federal law."   RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275-76 (7th Cir. 1997).   Thus, the court will look to federal case law to determine whether the Constitution permits the exercise of personal jurisdiction in this case.

Wisconsin's long-arm statute has been interpreted to confer jurisdiction "to the fullest extent allowed under the due process clause."   Daniel J. Hartwig Associates, Inc. v. Kanner, 913 F.2d 1213, 1217 (7th Cir. 1990).   See also Felland, 682 F.3d at 678 ("[C]onstitutional

13

and statutory questions tend to merge; compliance with the Wisconsin long-arm statute creates a presumption that constitutional due process is satisfied."); Kopke, 629 N.W.2d at 671 ("Compliance with the [long-arm] statute presumes that due process is met, subject to the objecting defendant's opportunity to rebut."). To comply with due process, "a defendant must have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" RAR, Inc., 107 F.3d at 1277 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction under the due process clause is divided into two types, general and specific. Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A., 623 F.3d 440, 444 (7th Cir. 2010). General jurisdiction means that the defendant "may be called into court there to answer for any alleged wrong, committed in any place." uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 425-26 (7th Cir. 2010). This "is a demanding standard that requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes." Id. Plaintiff does not suggest that it can meet this standard with respect to defendants, and the evidence would not support such a claim.

In Felland, 682 F.3d at 673, the Court of Appeals for the Seventh Circuit explained that the standard for establishing specific personal jurisdiction may be condensed to three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); (2) the alleged injury

14

must have arisen from the defendant's forum-related activities, id.; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice, International Shoe, 326 U.S. at 316.  The crucial inquiry is whether a defendant's contacts with the state are such that it should reasonably anticipate being haled into court. International Medical Group, Inc. v. American Arbitration Association, Inc., 312 F.3d 833, 846 (7th Cir. 2002) (citing Burger King, 471 U.S. at 474).

Defendants have not discussed these factors in any detail, arguing that plaintiff's citizenship is the only connection to Wisconsin and that it is the agreement and not the property that is the subject of this lawsuit.  For many of the same reasons explained above, I find that defendants have not rebutted the presumption that constitutional due process is satisfied in this case.


a.  Conduct purposefully directed at forum state

This inquiry depends in large part on the type of claim at issue.  Felland, 682 F.3d at 674.  In a breach-of-contract suit, personal jurisdiction generally turns on whether the defendant availed himself purposefully of the privilege of conducting business in the forum state.  Id.  Although "an out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts," RAR, Inc., 107 F.3d at 1277 (citing Burger King, 471 U.S. at 478), a defendant has "reached out" for the purposes of minimum contacts where the contract has a substantial connection to the state, such as ongoing regulation from within the state, Burger King, 471 U.S. at 478-79; Hyatt International

15

Corp., 302 F.3d at 716.  As discussed above, the contract between the parties in this case anticipated Omega's substantial, ongoing involvement in the Aloft Hotel even after the hotel was constructed.

For intentional torts such as misrepresentation and unfair trade practices, "the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state." Tamburo, 601 F.3d at 702.  Interpreting the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984), the court of appeals set forth three requirements for a plaintiff to show that conduct was purposefully directed at the forum state:  "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." Tamburo, 601 F.3d at 703.  In this case, defendants allegedly made a series of misrepresentations about Omega's financial wherewithal to plaintiff in Wisconsin and knew that their actions would affect plaintiff's ability to develop the hotel in Madison.

b.  Injury arises out of defendants' contacts

Federal circuit courts disagree about whether defendants' contacts must be the factual cause of plaintiff's injury, the factual and proximate cause or something in between. Tamburo, 601 F.3d at 708–09 (citing cases); Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1078 (10th Cir. 2008) (outlining the conflict).  The court of appeals has suggested that a mere "but for" causal relationship is insufficient, GCIU–Employer

16

Retirement Fund v. Goldfarb Corp., 565 F.3d 1018, 1025 (7th Cir. 2009) (citing O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 322 (3d Cir. 2007)), but it has declined to resolve the question definitively, Felland, 682 F.3d at 676-77; Tamburo, 601 F.3d at 709.

In any event, plaintiff's allegations are sufficient to establish even the strictest application of the standard because its alleged injury clearly arises from defendants' contacts with Wisconsin. Tamburo, 601 F.3d at 709 (finding same). Defendants' alleged misrepresentations to plaintiff in Wisconsin are the factual and proximate cause of plaintiff's injury. Felland, 682 F.3d at 676-77 (finding same with respect to defendants' fraudulent statements concerning progress of condominium development). Further, Omega entered into a carefully structured contractual relationship that envisioned continuing contacts with plaintiff in Wisconsin. As a result, "the 'quality and nature' of [defendants'] relationship to [plaintiff's venture in Wisconsin] can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" Burger King, 471 U.S. at 480 (breach of contract claim). According to plaintiff's allegations, defendants' subsequent refusal to fund the Wisconsin project caused foreseeable injuries to the Wisconsin project. Id.

c.  Fair play and substantial justice

"The final inquiry in the specific-jurisdiction analysis is whether the exercise of personal jurisdiction over an out-of-state defendant would offend traditional notions of fair play and substantial justice." Felland, 682 F.3d at 677 (citing International Shoe, 326 U.S. at 316). Relevant to this determination are factors such as the burden on defendant,

17

Wisconsin's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared state interest in "furthering fundamental substantive social policies." Id. (quoting Burger King, 471 U.S. at 477).

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Felland, 682 F.3d at 677. Defendants have failed to meet this burden. They have not raised any specific concerns with respect to this factor or identified any reason why it would be unfair to permit this suit to proceed against defendants in Wisconsin. Wisconsin has a strong interest in providing a forum for its residents to seek redress for wrongs inflicted by out-of-state actors and injuries suffered within the state. Id. Although defendants face some burden in being forced to defend an action in another state, out-of-state defendants always face such a burden. There is no suggestion that defendants' hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents. Id.

ORDER

IT IS ORDERED that

1. Plaintiff Madison Boardwalk, LLC's motion for leave to file a surreply, dkt. #19, is GRANTED; and

18

2. The motion to dismiss filed by defendants Omega Commercial Finance Corp. and Jon Cummings, dkt. #9, is DENIED; and

3. Plaintiff may have until November 21, 2013 to show that the individual defendants are citizens of Florida.

Entered this 7th day of November, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge