IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MADISON BOARDWALK, LLC,

                            Plaintiff,                   OPINION AND ORDER

      v.

                                           13-cv-288-bbc

OMEGA COMMERCIAL FINANCE CORP.,
JON S. CUMMINGS and
VON C. CUMMINGS,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This civil diversity action involves plaintiff Madison Boardwalk, LLC's effort to fund the development of an Aloft Hotel in Madison, Wisconsin.  Plaintiff alleges that Omega Commercial Finance Corporation refused to fund the project despite having made assurances to plaintiff that it had the money to fund the development, having accepted plaintiff's $25,000 fee and knowing that plaintiff had fulfilled all of the conditions set prior to the closing.  Plaintiff has sued defendant Omega for breach of contract and fraudulent trade practices and defendants Jon and Von Cummings for making intentional misrepresentations about Omega's ability to fund the project.

      Before the court are the parties' cross motions for summary judgment.  Dkt. ##40 and 46.  Plaintiff has moved for summary judgment on all of its claims.  Defendants Omega and Jon Cummings have moved for summary judgment only with respect to the breach of contract and misrepresentation claims.  Defendant Von Cummings has not joined in this motion or responded to plaintiff's motion for summary judgment.

I am granting plaintiff's motion for summary judgment and denying defendants' motion for summary judgment with respect to the breach of contract claim against defendant Omega because the undisputed facts show that plaintiff is entitled to judgment as a matter of law on that claim.  I am denying plaintiff's motion in all other respects because plaintiff has failed to adduce sufficient evidence to support its claims for fraudulent trade practices and misrepresentation or its request for damages.  Defendants' motion for summary judgment on the misrepresentation claim against Jon Cummings will be granted.  However, because none of the defendants have moved for summary judgment on the trade practices claim, the misrepresentation claim against Von Cummings or plaintiff's requested damages award, those issues will proceed to trial.

Before discussing the merits of the motions, I must address defendants' failure to follow this court's summary judgment procedures and the consequences of that failure.  In the preliminary pretrial conference order entered on October 2, 2013, the court gave the parties very specific instructions about how to file and respond to summary judgment motions.  Dkt. #31.  Besides pointing out important procedures, the order warns of the consequences of the failure to follow the procedures, stating in part that

> [I]f you do not follow the court's procedure for how to respond to summary judgment, then you will not get more time to do it over unless the court decides on its own that you should get a second chance. The only way to make sure that the court will consider your documents is to start early, do them right the first time, and file them and serve them on time. If you do not do things the way it says in Rule 56 and in the court's written summary judgment procedure, then the court will not consider your documents.

Id. at 5.  Attached to the order is the court's <u>Procedure to Be Followed on Motions for Summary Judgment</u>, which addresses issues such as the failures to file proposed facts and properly dispute the other party's proposed facts.  <u>Id.</u> at 13-17.

The court's summary judgment procedures are like written rules of a game that insure that everyone is playing by the same rules. They also help the court review and address motions by keeping information organized and concise.  Without them, parties could submit hundreds of exhibits to the court and send the court fishing for relevant facts.  Thus, defendants' failure to adhere to this court's procedures has resulted in dire consequences.

Defendants ran afoul of this court's summary judgment procedures in several ways. First, in all but two instances, defendants Omega and Jon Cummings did not refer to any evidence supporting their proposed findings of fact.  The court's summary judgment procedure requires that "[e]ach factual proposition must be followed by a reference to evidence supporting the proposed fact." Dkt. #31 at 13 and 14.  Jon Cummings later filed an affidavit with his reply brief, dkt. #55, but even assuming that some of defendants' proposed findings have support in the record, the procedural attachments make clear that "[t]he court will not search the record for evidence." Dkt. #31 at 14.  Second, defendants Omega and Jon Cummings have argued facts in their brief that were not set out in any proposed finding of fact or response to plaintiff's proposed findings of fact.  "The court will not consider facts contained only in a brief."  <u>Id.</u> at 16.

Finally, none of the three defendants filed a response to plaintiff's proposed findings of fact.  The court's procedure makes it clear that "[u]nless the responding party puts into

3

dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed." Id. at 15. (I note that plaintiff also has not submitted a response to the proposed findings of fact filed by defendants Omega and Jon Cummings. However, as explained above, I cannot accept those findings as undisputed because they are not supported by admissible evidence.)

Given the above considerations, I find the following undisputed facts.

UNDISPUTED FACTS

A. The Parties

Plaintiff Madison Boardwalk, LLC is a Wisconsin limited liability company with a principal place of business in Green Bay, WI. Plaintiff owns property at 844 John Nolen Drive in Madison, Wisconsin, the location of the proposed Aloft Hotel development.

Defendant Omega Commercial Financial Corp. is a direct balance sheet lender that holds itself out on its website as specializing in financing projects up to $500 million dollars with quick and efficient closings. (The parties do not define "direct balance sheet lender.") Its website states that it is "well positioned" to be "a leader in the lending industry as a sound alternative funding option." Dkt. #1, ex. A. Omega's website also states that "[a]s a result of these efficiencies the company's ability to offer terms and conditions for loan inquiries is expedited down to within weeks and not months." Id. Defendant Jon Cummings is the president and chairman of Omega, and defendant Von Cummings was acting as Omega's agent during the parties' negotiations.

4

B.  Negotiations

Brian Dineen of Trinity Capital Solutions LLC informed Michael Hubert, a real estate broker for plaintiff, that Trinity worked with a balance sheet lender that might have an interest in financing the construction of plaintiff's hotel.  Hubert learned subsequently that the lender was Omega.

On October 25, 2012, Jon Cummings sent plaintiff a financing term sheet for the project, in which Omega said that it would consider lending plaintiff $16,997,165 in exchange for a 50 percent interest in the project.  On October 29, 2012, plaintiff accepted the term sheet and delivered it to Omega with payment of a $25,000 due diligence fee.  Defendants have admitted that Omega did not have the funds described in the term sheet to lend to plaintiff on October 29, 2012.  Between October 29, 2012 and December 8, 2012, Terry Gerbers, one of the LLC members of plaintiff, provided defendants documents regarding the project to allow Omega to complete its due diligence, including the documents required by the eight conditions of funding listed in the term sheet.

On November 26, 2012, Holly Liebe, an agent of Omega, informed Gerbers that she would check to see when underwriting would be completed, after which Omega would "sign off" and send plaintiff a commitment letter.  On December 8, 2012, Omega sent Gerbers a proposed commitment letter, estimating the funding date to be 60 days from December 13, 2012, or March 14, 2013.  On December 13, 2012, Gerbers modified the commitment letter and sent the revised copy to Omega's broker, Trinity Capital Solutions.  Jon Cummings accepted the letter on December 13, 2012 and delivered it to Gerbers on December 20,

5

2012.  The commitment letter set forth the same eight conditions to funding that were in the term sheet.  In a paragraph entitled "Conditions of Funding," the letter states in relevant part:

> . . . Omega and its counsel shall reasonably require the following items, each of which must be acceptable to them in their reasonable discretion:  . . . (viii) financial statements of the Significant Parties.  All 3rd Party legal loan document and security agreement preparation cost/retainers shall be paid by the Borrower directly to Omega's designated law firm/attorney not to exceed $15,000.

Dkt. #1, exh. 5, at 4.

On December 14, 2012, Omega, through its agent Trinity Capital Solutions, acknowledged to Hubert that the financial statements were "in the file."  On March 17, 2013, Gerbers sent all of the documents responsive to the eight conditions to Von Cummings and Trinity Capital Solutions.  Neither Omega nor its agents made any subsequent demand to Gerbers for additional information or conditions.

In a March 25, 2013 email to Dineen, Gerbers summarized what he understood to be the events that had taken place since the issuance of the commitment letter, in an effort to seek assurances that the financing would go through.  Between December 8, 2012 and April 15, 2013, the parties discussed the project, including the fact that the funding negotiations had to close on or before April 22, 2013 to prevent the loss of key money and additional engineering and holding costs.  On April 6, 2013, Von Cummings told Gerbers that Omega could expedite the funding of the project if plaintiff bought $350,000 of Omega stock.  On April 7, 2013, Von Cummings acknowledged that he knew that Omega did not have the money to fund the project when he told plaintiff that the purchase of Omega stock

would expedite the funding of the project.  Because Jon Cummings is the president of Omega and the signatory to Omega's quarterly and annual financial statements, he also knew that Omega did not have the money to fund the project.

On April 15, 2013, Jon Cummings sent Gerbers a proposed stock purchase agreement to purchase shares of Omega stock.  Because Gerbers believed Von Cummings's statement that the purchase of stock would expedite the funding of the project, plaintiff reviewed and negotiated the stock purchase agreement.  Although plaintiff satisfied all of the funding conditions, Omega refused to fund the project.

In response to plaintiff's first set of interrogatories dated January 9, 2014, Omega admitted that plaintiff satisfied all of the conditions other than "Condition #8" (requiring plaintiff to submit its financial statements).

## C.  Damages

Plaintiff incurred significant legal fees in complying with the commitment letter and reviewing and countering Omega's proposal that plaintiff should purchase shares of Omega's stock to expedite the funding of the project.  Although plaintiff sought other funding sources in an effort to mitigate its damages, Gerbers avers that plaintiff incurred numerous expenses totaling $6,136,459.54.

## OPINION

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of

law.  Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986).  A "material fact" is one that "might affect the outcome of the suit."  Anderson, 477 U.S. at 248.  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  Further, as the Court of Appeals for the Seventh Circuit has reminded parties, "[s]ummary judgment is not a dress rehearsal or practice run; it is the . . . [moment] when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  Steen v. Myers, 486 F.3d1017 (7th Cir. 2007) (citations omitted).

In this case, plaintiff has moved for summary judgment on its breach of contract, fraudulent trade practices and intentional misrepresentation claims and has requested a specific award of damages.  Defendants Omega and Jon Cummings oppose plaintiff's motion and have filed a motion for summary judgment only with respect to the breach of contract and misrepresentation claims against them.  Defendant Von Cummings has not participated in the summary judgment briefing process.  As a result, for the remainder of this opinion,

8

I will use the term "defendants" to refer to defendants Omega and Jon Cummings unless otherwise noted.

## A.  Breach of Contract

Plaintiff contends that Omega breached the commitment letter by refusing to fund the hotel project even though plaintiff had met all eight conditions of funding.   Under general contract law, once a condition precedent is fulfilled, "liability can arise on the promise which such condition qualifies." Town Bank v. City Real Estate Development, LLC, 2009 WI App 160, 322 Wis. 2d 206, 220, 777 N.W.2d 98, 105, aff'd, 2010 WI 134, 330 Wis. 2d 340, 793 N.W.2d 476 (quoting Woodland Realty, Inc. v. Winzenried, 82 Wis.2d 218, 224, 262 N.W.2d 106 (1978)).  See also Kocinski v. Home Insurance Co., 147 Wis.2d 728, 739, 433 N.W.2d 654 (1988) ("Where the parties to the proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed.").

During discovery, defendants admitted that Omega satisfied all of the conditions except for number eight, which requires only that plaintiff submit its financial statements. (Although a stand alone provision related to the payment of attorney fees follows the eight conditions, it is not part of condition number eight.)  However, it is undisputed that (1) Omega acknowledged on December 14, 2012, that plaintiff's financial statements were in the file; and (2) Gerbers sent all of the documents responsive to the eight conditions to Von

9

Cummings and Trinity Capital Solutions on March 17, 2013.  Defendants do not discuss the financial statements in their response brief or their motion for summary judgment.

In opposing the breach of contract claim, defendants summarily state that plaintiff did not pay the attorney fees required by the agreement.  Although defendants do not identify a particular contract condition that plaintiff failed to meet, I assume that they are referring to the third party legal costs mentioned in the conditions of funding paragraph of the commitment letter.  The end of that paragraph states that "[a]ll 3rd Party legal loan document and security agreement preparation cost/retainers shall be paid by the Borrower directly to Omega's designated law firm/attorney not to exceed $15,000."  However, defendants have not proposed any facts or supplied any evidence about what costs they were incurred that were not paid by plaintiff.  Although the agreement anticipates costs up to $15,000, it does not state a specific amount due.

Further, as plaintiff points out, there is no evidence that defendants ever made a demand for payment of such costs.  In his late-filed affidavit, Jon Cummings avers that plaintiff "did not provide Omega with payment for attorneys' fees as provided in the agreement, thus Omega never retained legal counsel to complete a thorough review" of the documents submitted by plaintiff.  Dkt. #55 at ¶ 6.  Even if I were to consider that statement as an admissible fact, it implies that no legal costs were incurred because no attorney was ever hired.

Accordingly, plaintiff is entitled to summary judgment on its breach of contract claim against defendant Omega.  Defendants' motion for summary judgment on this claim will be denied.

## B.  Fraudulent Trade Practices and Misrepresentation

Because plaintiff's claims of fraudulent trade practices and misrepresentation are based on the same underlying conduct by defendants, I will address them together.

Wisconsin courts divide a claim for fraudulent trade practices under Wis. Stat. § 100.18(1) into three elements:  (1) the defendant made a representation to "the public" with the intent to induce an obligation; (2) the representation was "untrue, deceptive or misleading"; and (3) the representation materially caused a pecuniary loss to the plaintiff. Novell v. Migliaccio, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 151, 749 N.W.2d 544, 553. Similarly, to prove intentional misrepresentation, plaintiff must show that (1) the defendant made a factual representation; (2) which was untrue; (3) he made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) he made the representation with intent to defraud and to induce plaintiff to act upon it; and (5) plaintiff believed the statement to be true and reasonably relied on it to its detriment. Kaloti Enterprises, Inc. v. Kellogg Sales Co., 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 569, 699 N.W.2d 205, 211; Kailin v. Armstrong, 2002 WI App 70, ¶ 31, 252 Wis. 2d 676, 702, 643 N.W.2d 132, 145-46.

11

Plaintiff states summarily that Omega's website, term sheet and commitment letter are untrue, deceptive and misleading in violation of Wis. Stat. § 100.18 because they "represent[] that Omega has the funds to lend for the Project." Dkt. #41 at 4. It also alleges generally that Jon Cummings misrepresented that Omega had funds to lend plaintiff "through the Term Sheet, Commitment Letter and Stock Purchase Agreement," dkt. #41 at 5, and that Von Cummings falsely represented that Omega could expedite the funding if plaintiff bought $350,000 of Omega stock.

Plaintiff does not identify what specific statements in the term sheet, commitment letter or stock purchase agreement contain such representations. The term sheet states only that Omega would "consider lending plaintiff $16,997,165.00." A brief review of the commitment letter indicates that Omega promised to "contribute" the capital upon plaintiff's satisfaction of several conditions. Neither document discusses whether Omega "had the funds" to lend plaintiff. The parties' discussions concerning the stock agreement were similarly vague. It is undisputed that Omega's website states that it "specializes" in financing projects and is "well positioned" to be "a leader in the lending industry as a sound alternative funding option." However, plaintiff has not explained why these statements are misleading; on their face, they do not indicate that Omega actually had the capital available to fund plaintiff's project.

The only evidence that plaintiff proffers to show that defendants Omega or Jon Cummings acted knowingly or intentionally are Omega's financial statements, which appear to show that Omega had minimal assets and was operating at a loss as of December 31, 2012

12

and March 31, 2013. However, plaintiff has not included this information in its proposed findings of fact or explained why it would not have been possible for Omega to obtain the funding in some other manner (such as through investors). Plaintiff's claim against Von Cummings is somewhat stronger because the undisputed facts show that he knew that Omega did not have the funds on hand to fund the project when he told plaintiff that a stock purchase would expedite funding. However, plaintiff still has not developed a persuasive argument that the stock purchase would not have expedited funding through some other source.

The Court of Appeals for the Seventh Circuit has made it clear that summary judgment is "put up or shut up" time when a party "must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003). Plaintiff's cursory allegations are insufficient to show that it is entitled to judgment as a matter of law on either its fraudulent trade practices or misrepresentation claims. Jordan v. Binns, 712 F.3d 1123, 1134 (7th Cir. 2013) (undeveloped arguments are considered waived). As a result, I am granting defendants' motion for summary judgment on the misrepresentation claim against Jon Cummings. However, because none of the defendants have moved for summary judgment on the trade practices claim or the misrepresentation claim against Von Cummings, those two claims will proceed to trial.

13

C.  Damages

As proof of its damages, plaintiff has submitted the following list of expenses and losses totaling more than six million dollars:

- $25,620.50          Difference in sales price ($3,200,000 - $3,174,379.50)

- $90,000.00          Commission expense

- $203,700.00          Interest expense (March 15, 2013 - June 2, 2014)

- $57,532.61          Real estate taxes (March 15, 2013 - June 2, 2014)

- $60,000.00          Forfeiture of Starwood Aloft license

- $489,600.00          Starwood fines for failure to open Aloft

- $750,000.00          Loss of Starwood key money

- $4,237,500.00          Loss of NMTCs (plaintiff has not defined this term)

- $133,000.00          Architectural fees

- $58,867.87          Legal fees incurred in due diligence/closing

- $30,638.56          Legal fees incurred in litigation to date

Although defendants have not disputed the amount or challenged plaintiff's claim for relief in any way, plaintiff has the burden of proving its damages with reasonable certainty. Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., 206 Wis. 2d 158, 189, 557 N.W.2d 67, 80 (1996).  As plaintiff points out, this does not mean that it must prove damages with mathematical precision.  Id.  However, in this case, plaintiff has submitted nothing more than a list of unexplained costs.  For example, plaintiff fails to explain how or why it incurred $203,700 in an "interest expense" or $489,600 in "Starwood

14

fines." There is also no explanation of what "key money" is or what "NMTCs" are. Further, plaintiff has prevailed only on its breach of contract claim at this point. Even if I were to assume that its stated costs are fair and reasonable, plaintiff does not indicate what costs relate to which violation of its rights. As a result, I am unable to conclude as a matter of law that plaintiff is entitled to an award of $6,136,459.54. This issue will be addressed at trial.


ORDER

IT IS ORDERED that

1. Plaintiff Madison Boardwalk, LLC's motion for summary judgment, dkt. #40, is GRANTED with respect to its breach of contract claim against defendant Omega Commercial Finance Corporation, and DENIED in all other respects.

2. The motion for summary judgment filed by defendants Omega Commercial Finance Corporation and Jon Cummings, dkt. #46, is GRANTED with respect to the misrepresentation claim against defendant Jon Cummings, and the motion is DENIED in all other respects.

3.  The parties will proceed to trial on the fraudulent trade practices claim against defendant Omega, the misrepresentation claim against Von Cummings and the issue of damages.

Entered this 23d day of June, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

16